GEORGE F. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1563. Promulgated February 28, 1945.

*Henry C. Moeller, C. P. A.,* for the petitioner.
*Owen W. Swecker, Esq.,* for the respondent.

OPINION.

Mellott, *Judge*: Petitioner contests a deficiency in income tax for the calendar year 1940 in the amount of $3,652.28. Two questions are raised. The first is whether the gain realized by petitioner from the disposition of some shares of corporate stock is taxable under section 115 (c) of the Internal Revenue Code as a distribution in partial liquidation or under section 117 as a gain from the sale of capital assets. The second is the basis of the stock. The questions will be discussed in the order stated.

The facts have been stipulated and are found accordingly. Summarizing those applicable to the first issue petitioner, an individual residing at Omaha, Nebraska, and filing his income tax return with the collector for the district of Nebraska, had for some time been secretary of the Billings Dental Supply Co., hereinafter referred to as Billings. He resigned that office on October 21, 1940.

Various blocks of stock in Billings had been purchased by petitioner between 1915 and 1936 and additional stock had been acquired as stock dividends, as shown in paragraph four of the stipulation. On January 2, 1940, petitioner was the owner of 367 shares of the par value of $100 each. On that date he surrendered 36 shares to Billings and received $3,600. Upon brief he concedes that that amount was received as "a distribution in liquidation as ruled by the Commissioner in his ninety day letter." In addition to the 36 shares acquired from petitioner, Billings at the same time acquired 264 additional shares from other stockholders and on January 2, 1940, reduced its outstanding shares from 3,150 to 2,850.[1] This reduction of capital stock was not ratable among all stockholders.

On October 17, 1940, Billings entered into a contract to sell its supply business to the S. S. White Dental Co. After the sale the name was changed to Billings Dental Laboratory and the company continued in business under that name, operating dental laboratories in Omaha and Lincoln, Nebraska.

Due to the contemplated sale of the supply business of Billings, petitioner desired to withdraw from active participation in the affairs of the corporation and to dispose of his stock. On October 21, 1940,

---

[1] Paragraph nine of the stipulation states that the outstanding shares were reduced from $3,150 to $2,850. The context indicates and we have concluded that the dollar sign was erroneously used.

he and several other stockholders, collectively owning 486 shares of Billings stock, agreed in writing to:

* * * sell all his stock in said company to B. Park Billings, President and Agent for Billings Dental Supply Company for the price of One Hundred Ten and no 100ths ($110.00) Dollars per share and each agrees to deliver to vendee his certificate or certificates of stock for said number of shares in said corporation.

It was agreed that payment for the stock would be made "on or before November 20, 1940, in cash."

The 331 shares of stock owned by petitioner were turned in to the corporation in accordance with the terms of the agreement and canceled by it. Of the 155 shares turned in to the corporation by other stockholders at the same time, 80 were canceled and 75 were reissued to two stockholders.

On November 7, 1940, Billings gave notice of a special meeting of stockholders to be held November 14, 1940, for the following purposes, *inter alia*: To amend the articles of incorporation to change the nature and objects of the business; to change the number of authorized directors; to change the number and name of officers; to authorize a sale of the dental supply business; to lease space to the S. S. White Dental Manufacturing Co.; and:

* * * In general to carry out the terms of the contract entered into by the directors of the company with the S. S. White Dental Manufacturing Co. dated October 17, 1940, and to do all things necessary for the corporation to do in making said sale and changes in the business and to retire a portion of the capital stock of the company.

On November 14, 1940, pursuant to the foregoing notice, a meeting of stockholders was held. The minutes state that 486 shares of stock were purchased from various stockholders on October 21, 1940, 75 of which had been reissued to two named stockholders. The concluding sentence of the minutes is as follows:

* * * The President then announced the purchase of 486 shares of the Company's stock at the price of $110.00 per share, which had been authorized by the Directors of the Company on October 19, 1940, that the sale had been completed and all the stock had been delivered to the Company and retired. Upon motion by A. S. Billings, duly seconded, the purchase and retirement of this stock was approved.

In support of his contention that a sale was made and that section 117 is applicable, petitioner points to the fact that the words "sale" and "purchase" were used in the written contracts between the parties and in the minutes of the meetings of the board of directors and stockholders of Billings. Counsel argues that so far as petitioner was concerned he made a sale of his stock; that he "did not care and did not know what the purchaser would do with the 331 shares"; that he was not a party to the ultimate retirement of the stock; and that

whatever the purchaser did with it should not enter into the treatment of the transaction for tax purposes.

The use by the parties of the terms "purchase" and "sale" does not determine the character of the transaction. *Kena, Inc.*, 44 B. T. A. 217, 219. These terms are frequently used in connection with liquidating distributions; and, even though such transactions have some of the elements of a sale, the gain derived therefrom is not taxable under section 117 (a). Section 115 (c) expressly provides that "despite the provisions of 117 (a), 100 per centum of the gain * * * shall be taken into account in computing net income" in the case of gain resulting from the partial liquidation of a corporation. As the court said in *Cohen Trust* v. *Commissioner*, 121 Fed. (2d) 689; "Under well-known rules of construction the general provision in section 117 (a) would give way to section 115 (c) where the latter is applicable. * * * Consequently, the answer to the question whether the distribution by the corporation was in complete liquidation or redemption of a part of its stock must be wholly unaffected by whether or not the transaction could in any view be deemed to have been a sale."

Section 115 (i) of the Internal Revenue Code defines a distribution in partial liquidation as "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." In determining whether a partial liquidation has taken place the controlling factor is the intent of the corporation in reacquiring its stock. If stock is purchased to be canceled and retired, the seller receives a distribution in partial liquidation; and the fact that he may not know it was purchased with this intention is immaterial. *Hammans* v. *Commissioner*, 121 Fed. (2d) 4; *Cohen Trust* v. *Commissioner, supra; Hill* v. *Commissioner*, 126 Feb. (2d) 570; *Benjamin R. Britt*, 40 B. T. A. 790; affirmed upon other issues, 114 Fed. (2d) 10; *Chester A. Souther*, 39 B. T. A. 197; and *Dill Manufacturing Co.*, 39 B. T. A. 1023. If stock is purchased to be held as treasury stock subject to resale, an ordinary capital transaction results. *William A. Smith*, 38 B. T. A. 317; *W. C. Robinson*, 42 B. T. A. 725; *Dorsey Co.* v. *Commissioner*, 76 Fed. (2d) 339; *Alpers* v. *Commissioner*, 126 Fed. (2d) 58.

There is no evidence in the instant case that the stock was purchased to be held in the treasury or to be reissued. The stipulated facts indicate the contrary. Thus the provision in the contract for deferring payment 30 days indicates that the corporation did not intend to make payment until, as actually eventuated, the stock had been canceled and retired and appropriate action had been taken to approve such disposition of it. Nor could it be found on this record—

if important—that petitioner did not know that this was precisely what the corporation intended to do. The sequence of events shows that the sale of a portion of the assets had been made by Billings to the S. S. White Dental Co. on October 17, 1940. Two days later and due to that sale Billings contracted to acquire petitioner's stock. At that time he was secretary of the company. It is reasonable to suppose that he knew all about the details of the sale and the action contemplated in connection with the reorganization. In any event the parties have not stipulated he did not know. The stipulation was specifically made "subject to the right of either party to introduce evidence of other facts not inconsistent" with the facts stipulated; but petitioner did not testify. Under the circumstances, therefore, it can not be found as a fact that petitioner did not know that his stock was being acquired by Billings for the purpose of being canceled or retired.

The character of the transaction must be judged by all of the surrounding facts and circumstances. In our opinion those present here show that there was a partial liquidation of Billings during the fall of 1940. It follows that the respondent did not err in taxing petitioner's gain under section 115 (c), *supra*.

The difference between the parties as to the basis of the stock stems from the acquisition by petitioner of 50 shares of Billings stock in 1924 as a stock dividend (common upon common) and the sale in 1932 of 41 of the shares thus acquired. Upon the acquisition of the stock in 1924 the basis of the 325 shares then owned by petitioner, under article 1599 of Regulations 65, was as follows:

| Shares | Old basis | Total | New basis | Total |
|---|---|---|---|---|
| 201.096 | 73.10 | $14,700 | 60.92 | $12,250.22 |
| 23.484 | 87.72 | 2,060 | 73.10 | 1,716.68 |
| 25.42 | 100.00 | 2,542 | 83.33 | 2,118.25 |
| 25 | Purchased 2-18-24 at $100 | | | 2,500.00 |
| 50 | Stock dividend | | | 3,216.85 |
| Total | | | | 21,802.00 |

By reason of later purchases, additional stock dividends, and the application of a similar regulation under later revenue acts, the basis of 41 of the stock dividend shares sold in 1932 had become $2,149.17. The 41 shares were retired by the company at par in 1932 and petitioner reported the amount received ($4,100) as an ordinary dividend in his return of income for that year. Tax thereon was paid at surtax rates only. The parties have now stipulated that if he had reported the gain as ordinary taxable income, using as the cost of the shares their proper basis ($2,149.17) he would have been liable for an additional tax of $92.81.

The materiality of the last portion of the preceding paragraph is not readily apparent.. Respondent, in our judgment, was clearly correct in using, as the basis of the 367 shares retired in 1940, their cost as shown in paragraph 4 of the stipulation, i. e., $22,536.16. Petitioner insists he is entitled to use as a basis $24,685.33 or $67.262 per share rather than $61.406 per share, as determined by respondent. The difference between the two amounts is $2,149.17 and represents the cost of the 41 shares sold in 1932. We know of no method or rule of law by or under which the basis of stock sold in an earlier year may become a part of stock retained. However, we shall consider more fully the argument of the parties.

On brief petitioner states that he reported the receipt of the $4,100 in his income tax return for 1932 under the provisions of section 115 (g) of the Revenue Act of 1932, which reads as follows:

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

Section 113 (a) (19) of the Internal Revenue Code (as added by section 214 of the Revenue Act of 1939) provides in part as follows:

(A) If the property was acquired by a shareholder in a corporation and consists of stock in such corporation, or rights to acquire such stock, acquired by him after February 28, 1913, in a distribution by such corporation (hereinafter in this paragraph called "new stock"), or consists of stock in respect of which such distribution was made (hereinafter in this paragraph called "old stock") and

(i) the new stock was acquired in a taxable year beginning before January 1, 1936; or

(ii) * * *

then the basis of the new stock and of the old stock, respectively, shall, in the shareholder's hands, be determined by allocating between the old stock and the new stock the adjusted basis of the old stock; such allocation to be made under regulations which shall be prescribed by the Commissioner with the approval of the Secretary.

\* \* \* \* \* \* \*

(D) Subparagraph (A) shall not apply if the new stock or the old stock was sold or otherwise disposed of in a taxable year beginning prior to January 1, 1936, and the basis (determined by a decision of a court or the Board of Tax Appeals, or a closing agreement, and the decision or agreement became final before the ninetieth day after the date of the enactment of the Revenue Act of 1939) for determining gain or loss on such sale or other disposition was ascertained by a method other than that of allocation of the basis of the old stock.

Respondent contends that the $4,100 received by petitioner in 1932 upon the redemption and retirement of the 41 shares theretofore

received by him as a stock dividend constituted a distribution in partial liquidation [2] and that the gain resulting therefrom should have been reported in that year as ordinary taxable income. He also contends that in any event the cost to petitioner of these 41 shares was properly eliminated under the provisions of subparagraph (A) of section 113 (a) (19), *supra*, in determining the cost, in 1940, of the 367 other shares then owned.

Petitioner urges that while subparagraph (D) of section 113 (a) (19), *supra*, states that where a final determination has been made by a court, Board of Tax Appeals, or closing agreement, no change should be made in the method used in prior years, this provision applies with equal force where the Commissioner has accepted returns filed as correct and has made no change in any of the years prior to 1940. He also urges that the $4,100 was in redemption of certificate #108 received as a stock dividend on February 18, 1924, that it was taxed as an ordinary dividend under the laws applicable in 1932, and that it now comes under the rule of Regulations 103, paragraph 19.113 (a) (19)–2, that:

> * * * the basis for determining gain or loss with respect to the remaining shares shall be fixed in a manner consistent with the prior determination to the end that, the sale or other disposition of all lots being considered, the taxpayer will have effected ultimately a tax-free recovery of the total cost or other basis of his original shares, and no more.

It may not be amiss to discuss briefly the events which prompted Congress to enact section 113 (a) (19), *supra*. The decisions of the Supreme Court on *Koshland* v. *Helvering*, 298 U. S. 441, and *Helvering* v. *Gowran*, 302 U. S. 238, "upset a long established Bureau rule providing for an allocation of basis in the case of all stock dividends whether taxable or not." Law of Federal Income Taxation, Mertens, vol. 3, sec. 21.149. In the *Koshland* case it was held that where dividends on preferred stock were paid in common stock the stockholder, upon a subsequent sale of the preferred stock, could not apportion his

---

[2] Section 115 (c) and (h) of the Revenue Act of 1932 provides :

"(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

* * * * * * *

"(h) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

cost between the preferred and common. In the *Gowran* case, where the facts were similar, except that dividends on common stock were paid in preferred stock and the preferred· stock was sold, the Court held that the allocation of basis rule did not apply, that·the preferred stock had cost nothing, and that therefore upon its subsequent sale the entire proceeds constituted taxable income. As a result of these decisions some stockholders, who had sold a portion of their original stock and reported the gain under the allocation of basis rule, would not have returned to them, tax-free, their total original cost or basis, even though they had followed the Bureau rule, and in other instances where they sold dividend stock, allocating to it a portion of the basis for the original stock, they could claim, as their basis for gain or loss upon subsequent sale of the later, its cost, undiminished by any amount.

The purpose of the enactment of section 113 (a) (19), *supra*, was to provide a rule which would be fair both to the taxpayer and to the Government "to the end that the taxpayer would not be deprived of an offsetting basis equal to his original cost and on the other hand the Commissioner would be entitled to tax the entire differential between the amount of the original basis for the original stock and the total sums received from the original stock and the dividend stock." Law of Federal Income Taxation, Mertens, vol. 3, p. 582.

The question raised by the contentions of the parties is whether the general rule provided for in subparagraph (A), or the exception to the general rule contained in subparagraph (D), should be applied. The shares in issue had been acquired as a dividend after February 28, 1913, and in a taxable year beginning before January 1, 1936. Subparagraph (A) is therefore applicable and the basis of the new dividend stock and of the old stock must be determined by allocating between the old and the new stock the adjusted basis of the old stock, unless, as petitioner urges, the basis for the shares disposed of in 1932 had been determined by a decision of a court, or the Board of Tax Appeals (now Tax Court), or a closing agreement, by a method other than that of allocation of the basis of the old stock, in which event the exception contained in subparagraph (D) would apply.

There has been no determination by any of the tribunals mentioned in subparagraph (D) or by a closing agreement justifying a departure from the allocation of basis method in the instant case. We can not stretch the wording of the statute, as petitioner apparently would have us do, to include an instance where no closing agreement was ever entered into between the petitioner and the Commissioner with respect to petitioner's method of reporting the redemption of the 41 shares in 1932. Moreover, we do not have here an instance where

petitioner is being deprived of his right to recover tax-free his original cost by reason of regulations misinterpreting the law or judicial decisions effecting detrimental changes in regulations, or a closing agreement. The law and regulations requiring allocation of basis between old stock and dividend stock of the same class did not change between 1924 and 1940, and the receipt by petitioner of the dividend stock in 1924 had the effect of apportioning what had been the cost of the shares theretofore owned by him proportionately among those shares and the new dividend stock.

As indicated at the outset of the discussion, we are of the opinion that the Commissioner used the correct basis for the stock in determining the gain realized by petitioner upon its retirement. Cf. *Bigelow* v. *Bowers*, 68 Fed. (2d) 839; certiorari denied, 292 U. S. 656; and *Lembke* v. *Commissioner*, 126 Fed. (2d) 940. The parties have stipulated, however, that petitioner's net taxable income for the year 1940, exclusive of any gain or loss from the disposition of the stock, was $8,930.36, which is apparently less than the amount used in determining the deficiency. A recomputation of the deficiency must therefore be made.

*Decision will be entered under Rule 50.*