GLADYS C. BLUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5791. Promulgated June 21, 1945.

*Maurice Epstein, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

306

OPINION.

HARRON, *Judge*: The only question before us is whether the amounts received by petitioner from the corporation in each of the taxable years were distributions in partial liquidation within the meaning of section 115 (c) of the Internal Revenue Code,[1] as respondent contends, or whether the amounts were received through a purchase of the stock by the corporation as petitioner contends. If the transaction falls within section 115 (c), the full amount of the gain realized by petitioner is taxable to her, whereas if the transaction merely constituted a sale to the corporation, only 50 percent of the gain realized by petitioner is taxable to her under section 117 (b) of the code. There is no dispute as to the basis of petitioner's stock, the length of the holding period, or the amount of gain realized by her.

In support of his contention that the transaction constituted a distribution in partial liquidation within the meaning of section 115 (c), respondent points out that the corporation referred to the transaction as a "redemption" in its stock certificates and in the resolution providing for the recapitalization of the corporation. He also characterizes the first 6 percent preferred stock as a "limited purpose" stock

---

[1] SEC. 115. DISTRIBUTION BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. \* \* \*

which, he argues, could not have been resold or reissued, and therefore must be deemed to have been retired upon acquisition by the corporation. Respondent cites *George F. Jones*, 4 T. C. 854; *Hamilton Allport*, 4 T. C. 401; *Williams Cochran*, 4 T. C. 942; and *L. B. Coley*, 45 B. T. A. 405, in support of the general proposition that the transaction constituted a partial liquidation under section 115 (c).

Petitioner argues that section 115 (c) only applies where stock is acquired for cancellation or retirement and not where it is purchased and held as treasury stock. She relies upon *Alpers* v. *Commissioner*, 126 Fed. (2d) 58; *Borg* v. *International Silver Co.*, 11 Fed. (2d) 147; *W. C. Robinson*, 42 B. T. A. 725; *R. W. Creech*, 46 B. T. A. 93; and *William A. Smith*, 38 B. T. A. 317.

Section 115 (i) of the Internal Revenue Code defines a distribution in partial liquidation as a "distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." As pointed out in *George F. Jones*, *supra*, however, in determining whether a partial liquidation has taken place, the controlling factor is the intent of the corporation in reacquiring its stock. If stock is purchased to be canceled and retired, the seller receives a distribution in partial liquidation. *Hill* v. *Commissioner*, 126 Fed. (2d) 570; *Cohen Trust* v. *Commissioner*, 121 Fed. (2d) 689; *Hammans* v. *Commissioner*, 121 Fed. (2d) 4. However, if stock is purchased to be held as treasury stock subject to resale, an ordinary capital transaction results. *Alpers* v. *Commissioner*, *supra;* *W. C. Robinson*, *supra; William A. Smith*, *supra; Harold F. Hadley*, 1 T. C. 496.

The situation presented by the facts in this case is perfectly clear. The result which must be reached perhaps is a harsh result, because when the company was reorganized one class of preferred stock could have been issued instead of two classes and such preferred stock could have been free from any condition that it must be redeemed, and, further, such stock could have been of a character which was susceptible of being held as treasury stock. The question must be decided on the basis of what was done rather than what could have been done. The question arises under section 115 (c), and the statute is controlling.

Respondent's argument that the first preferred stock of the company was a "limited purpose stock" which was issued by the company with the intention of redeeming it within a few years is sound, and is supported by the facts. This is best illustrated by comparing the statement of the privileges of the second preferred stock with the statement of the privileges of the first preferred stock. That which is stated on the face of the certificates for the second preferred stock is limited to

the usual statement of the rights to preferential dividends and the rights to a distributive share of the assets of the corporation upon liquidation, and the voting rights. There is no reference or statement to a planned redemption of said second preferred stock within a certain number of years as is stated on the face of the certificates for the first preferred stock. The second preferred stock was and is stock that is susceptible of purchase by the company and holding as treasury stock for possible resale. But the first preferred stock was not, by its terms, susceptible of any resale after surrender to the corporation by Agnes Cohen and petitioner. Of course, they are not mentioned by name on the face of the certificates for the first preferred stock which were issued on December 31, 1935, but any reasonable inquiry into the records of the company would show that on December 31, 1935, 504 shares of "this issue" namely, the first preferred stock, were owned by Agnes Cohen, and 252 shares were owned by petitioner. The following words on the face of the certificates for the first preferred stock can not be ignored in the determination of the question which is presented: "304 shares of this issue having already been redeemed by the holder of 504 shares of this issue, the balance of 200 shares shall be redeemed on demand of the holder thereof during the year 1936. Thereafter, 252 shares, as indicated on the certificates representing the same, are to be redeemed on January 31, 1937, and on the 31st day of each succeeding January thereafter until this entire issue is redeemed and all accrued dividends to date of call or redemption." It is perfectly obvious that a decision was made when the company was reorganized to issue a special class of stock for the sole purpose of taking care of the object of the agreement of February 20, 1926, and that when that object had been fulfilled through the use of the special stock, to wit, the first preferred stock, that special stock could not be used by any new holder acquiring any shares of the first preferred stock after the periods within which the stated amounts of first preferred stock were to be redeemed. The object of the 1926 agreement was to guarantee to the widow of Robert Cohen, and the beneficiaries under his will, receipt of $252,000, the par value of his shares of old common stock. Of course, it is conceivable that Agnes Cohen or petitioner could have assigned their certificates for first preferred stock to another person, and that such assignee, or assignees, would be entitled to the rights set forth on the certificates of the first preferred stock. But it is perfectly clear that after the company fulfilled its obligations under the terms of the first preferred stock to Agnes Cohen, or petitioner, or their assignees, if any, then the corporation's obligations with respect to "this issue" of the first preferred stock ended. It is inconceivable that any outsider would purchase any first preferred stock from the company in the event that the company undertook to issue new certificates under

that issue after Agnes Cohen and petitioner surrendered the certificates which were issued to them in 1935. It is inherent in the concept of treasury stock that stock which is so held in the treasury of a corporation is of a type which can be sold to the public; otherwise, treasury stock could not possibly be considered as an asset of the corporation. What is said above is said with particular reference to the facts in this case, and nothing further need be said to amplify the point.

In Regulations 103, sec. 19.115–5, par. c, p. 331, there is given a very good example, as follows: "A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all of the shares of a particular preference or series  *  *  *." In this case, upon the reorganization of the company, a particular preference and series of stock was issued; it was stated that the said particular preference of stock was to be redeemed.

Due consideration has been given to the notations which were typed on the backs of the certificates of the first preferred stock which were surrendered by petitioner and Agnes Cohen, to the effect, that the certificate was acquired by the company as "treasury stock." The secretary-treasurer of the company was the person who made the notations on the stock certificates. He testified at first that he received his instructions from the board of directors, through the president of the company, to open a treasury account and to mark the stock accordingly. However, upon further question, he stated that there was not in evidence in this proceeding any resolution of the directors or the stockholders that the first preferred stock should be held as treasury stock, and he testified that he did not know of any formal resolution. He was the secretary of the company and if there had been a resolution adopted at any meeting he would have written the minutes of the meeting. Upon further questioning he testified that his instructions with reference to treasury stock came from the president of the company, and that testimony is understood to mean that his instructions came from the president of the company only. The president was George Cohen, the majority stockholder. His instructions are at variance with the terms of the first preferred stock and of the minutes of the special meeting which was held on December 28, 1935, and with the terms of the amendment to the charter of the corporation which was filed on December 30, 1935.

Under all the facts we can not find any justification for holding that the first preferred stock was issued by the company with the intention that it was to be purchased from Agnes Cohen and petitioner and held as treasury stock. The contrary is supported by the evidence. Therefore, this case does not come within the rule of such cases as petitioner relies upon, where the facts show that it was the intent of the corporation in reacquiring its stock to purchase the stock for holding in the treasury. Rather, the facts here are clear that the first preferred stock

was to be redeemed.   It is and was not material whether the stock was marked canceled when it was reacquired.   The redemption of the stock in itself effected a cancellation of the stock for all practical purposes.   It is exceedingly doubtful whether the stock could be reissued, and unless it could be reissued it does not have the main attribute of treasury stock.   *Hamilton Allport, supra.*

Respondent's determination is sustained.

*Decision will be entered for the respondent.*